No. 6662.

NEUVILLE BIENVENU VS. FACTORS' & TRADERS' INSURANCE COMPANY.   JOHN A. MORRIS.

ON MOTION TO DISMISS.

A Motion to dismiss for incompleteness of the Transcript or any mere informality, must be made within three judicial days after the filing.

When an Appeal is dismissed for failure of the Appellant to file the Transcript in time, it shall be considered as abandoned, and he shall not afterwards be allowed to renew it.

A *Curator ad hoc* appointed to represent an absent defendant, has no right to abandon the Appeal taken by him.

The terms Curator *ad hoc*, Attorney *ad hoc* and Advocate, when used with respect to an absent defendant, all equally indicate the person appointed by the Court to defend him, and no real distinction exists between them.

The opinion of the Court was delivered by

MARR, J.   Appellee moves to dismiss on three grounds:

1st.   That the transcript is incomplete.

2d.   That a previous appeal taken by the attorney and curator *ad hoc* representing defendant, appellant, has been dismissed because of the failure to file the transcript in time.   See the case reported, 28 An. 901.

3d.   That this previous appeal has been adopted by defendant, and

made the basis of an injunction sued out by him to arrest the execution of a judgment in suit No. 27,061, of the Superior District Court.

First. A motion to dismiss for incompleteness of the transcript, or any mere informality, must be made within three judicial days after the filing. Murray vs. Bacon, 7 N. S. 271; Temple vs. Marshall, 11 An. 613.

Second. It has been uniformly decided, since the adoption of the Code of Practice, that when an appeal is dismissed for failure of the appellant to file the transcript in time, "it shall be considered as abandoned, and he shall not be aftewards allowed to renew it." R. C. P. Art. 592; Rost vs. St. Frances Church, 5 N. S. 594; Champomier vs. Washington, 2 An. 723; Ducourneau vs. Levistones, 4 An. 30; Dwight vs. McMillen, 4 An. 350; Tarleton vs. Wofford, 15 An. 592; Succession of Andrews, 16 An. 340; Redmond vs. Mann, 24 An. 149.

These authorities also show that the failure to file the transcript in time is not a mere informality; and that the objection may be made at any time.

The counsel for appellant maintains that he was appointed *attorney ad hoc*, not *curator ad hoc*, as the law requires; that he appeared for and represented the defendant, and took the first appeal, under the impression that he had been regularly appointed *curator ad hoc*; and that appellant who has taken this appeal, *propria persona*, is not bound or precluded by anything that was done with respect to the first appeal.

In the original petition appellant is described as "domiciled" in the State of New York, and as being absent; and there is a prayer for the appointment of a *curator ad hoc* to represent him. A citation was issued to be served on him; and the return was that he could not be found, after diligent search and inquiry, and that the sheriff was credibly informed that he had no domicile in the State, "and now resides in the State of New York."

There is an extract from the minutes of 6th November, purporting to be "motion and order to appoint *curator ad hoc* to represent Morris." In drawing up the motion, which follows this caption, and which was made the order of the Court, the terms used are: "It is ordered that B. R. Forman, Esq., attorney and counselor at law, be appointed *attorney ad hoc*, to represent the absent defendant," etc.

It also appears that there was charged on the Fee Docket "notice to B. R. Forman, *curator ad hoc*;" and that this paper has been lost from the record, and cannot be found. The citation was addressed to "Mr. B. R. Forman, *curator ad hoc*;" and, together with a copy of the petition, was served on "B. R. Forman, *curator ad hoc*, in person," on the 9th November, 1875. On this service, default was taken against the defendant, which recites that he, through his curator *ad hoc*, had failed to appear, although duly cited. Three days after, on the 26th November, Mr.

Forman appeared, and had the default set aside, on suggesting that defendant "who is a citizen of New York," will be present in the city about the 1st December, "and that his presence is material and necessary for this mover to properly appear and answer, and represent the rights of the said Morris."

On the 8th December, a default was again taken against defendant; and on the 10th December, "on motion of B. R. Forman, appointed by the Court *curator ad hoc*," etc., this default was set aside, and he was allowed to answer; and on that day he filed an answer which begins: "Now comes B. R. Forman, appointed by the Court *curator ad hoc*," etc. This answer, which occupies nearly six pages of the transcript, gives the details of the claim set up by Morris to the property in question, calls in a new party, and pleads a reconventional demand; and it is signed "B. R. Forman, *curator ad hoc*."

Mr. Forman appeared as curator *ad hoc*, and represented defendant on the trial; and an extract from the minutes shows that, on the 20th December, when the case was taken under advisement, leave was granted to "B. R. Forman, *attorney and curator ad hoc* of John A. Morris, to file a brief." Judgment was rendered on the 28th January, and on 2d February, Mr. Forman, *curator ad hoc*, etc., moved for a new trial; and as curator *ad hoc* he moved for and obtained an order of appeal. In the body of the appeal bond he is described as "Benjamin R. Forman, attorney and curator *ad hoc* representing John A. Morris;" and the bond purports to be signed by "Benjamin R. Forman, attorney and curator *ad hoc* representing John A. Morris."

We entertain no doubt of the legality and propriety of the appointment of Mr. Forman as curator *ad hoc*. The prayer of the petition is that a curator *ad hoc* be appointed; and if the words "attorney *ad hoc*" were a misdescription, it would have been effectually cured by the prayer of the petition, and by the citation addressed to and served on Mr. Forman as curator *ad hoc*. When he appeared and had the first default set aside, he thereby accepted the appointment as curator *ad hoc*, he accepted it again when he had the second default set aside; and through all the stages of this proceeding, he appeared and represented defendant.

The R. C. C. Art. 56 requires the judge to appoint a curator *ad hoc* to defend the absentee against whom suit is brought, if he is not otherwise represented; and the R. C. P. Art. 116, requires the plaintiff, who intends to institute suit against a person who is absent and not represented, to demand that a curator *ad hoc* be named to defend the suit. Article 255, of the R. C. P., styles the person appointed to defend the absent defendant in an attachment, "advocate;" and article 294 calls the person appointed to defend the absent owner of property against

which proceeding *in rem* is taken to enforce a privilege, "advocate." Article 737, calls the person appointed to represent the absent mortgageor in a proceeding *via executiva*, "attorney;" and the Act of 1857, p. 84, which authorizes clerks of courts to appoint "curators *ad hoc*" and "attorneys *ad hoc*," to represent absent defendants, calls them, in the succeeding section, without distinction, "attorneys."

The words "advocate" and "attorney," as used in these several articles of the C. P. and the Act of 1857, are translations of the word "avocat," which was used in the original French text of the C. P. Laudais defines *avocat*, "celui qui fait profession de défendre des causes en justice;" and Webster defines *advocate*, "one who pleads the cause of another before any tribunal or judicial court."

In Louisiana, and in most of the States, except where some special quality or function is to be designated, the same person is called, indifferently, attorney, counselor, advocate; and the words "attorney *ad hoc*," "curator *ad hoc*," and "advocate," when used with respect to an absent defendant, indicate the person named and appointed by the Court to defend him in the suit in which the appointment is made.

We think the description of Mr. Forman in the body of the appeal bond, and in his signature to it as " attorney and curator *ad hoc*, representing John A. Morris," was not intended to indicate a change in his relations to Morris; and that he was, throughout the proceeding, acting under the appointment of the Court, and not as the employed attorney and agent of Morris.

The curator *ad hoc*, cited and appearing as such under the appointment of the Court, binds the absent defendant, within the sphere and scope of his duty and functions; but he has no power to waive or to abandon any of the rights of the defendant. If Mr. Forman had prosecuted the appeal which he took, Morris would have been bound by the decree rendered on the appeal. The appeal, which was suspensive, was dismissed because of the failure to file the transcript in time; and if Mr. Forman had been the employed attorney of Morris, his failure in this respect would, under article 594 of the C. P. and the authorities already cited, have been considered as an abandonment, if the appellant had not himself filed the transcript in time; and the appeal could not have been renewed; but as Mr. Forman was not the attorney, in the ordinary sense of the word, but was simply attorney *ad hoc*, or curator *ad hoc*, as this description is designed to show, the defendant Morris cannot be considered as having abandoned his right of appeal; and although the right to appeal suspensively no longer existed, because of the lapse of time, Morris had the right to appeal devolutively, as he has done, in person.

The motion to dismiss is, therefore, overruled.

Bienvenu vs. Factors' & Traders' Insurance Company.

## On the Merits.

A. B. and C. are owners undividedly of lots of ground 1, 2 and 3.

D. has a mortgage with the pact *De non alienando* on the one undivided third interest of C. in the three lots.

A. B. and C. partition the three lots among themselves, and lot 3. is assigned to C.

C. puts a mortgage upon said lot 3 of which he has become sole owner. E., the holder of this mortgage, forecloses it and buys in said lot 3 at sheriff's sale.

D. takes a judgment against C., seizes and sells his one undivided third interest in the three lots and buys it in, ignoring the previous adjudication to E.

D. then brings a partition suit against A. and B., averring their respective one undivided one-third interest in the three lots; and he, in the same suit, has E. cited, and prays for judgment against him decreeing he has no title to lot 3.

In answer to the partition suit, A. and B. admit the title of D., as alleged by him.

*Held:* that the pact *De non alienando* availed D. in executing his judgment against C., as well as if he had proceeded to foreclose his mortgage by executory process; that D. had the right to cite E., in the partition suit, to defend the title he lay to lot 3; that *quoad* E., the suit is petitory and he must establish his title; that *quoad* A. and B. the suit is for a partition and their title is averred by the plaintiff and needs not be established; that the original extrajudicial partition between A. B. and C. did not affect the mortgages upon their respective undivided interests; that when C. gave a mortgage to E. upon lot 3, it only affected his one undivided third interest in said lot, and when E. foreclosed his mortgage and bought in, he only acquired that one undivided third interest, and only got a title defeasible by the pact *De non alienando* of D.: that E., therefore, has no title to lot 3.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier,* J.

_____

*Chas. F. Claiborne* for Plaintiff and Appellee:

Any alienation or encumbrance of property mortgaged with the pact of non-alienation, is void and of no effect, as against the mortgagee.

The third holder of such property is not a third possessor, nor entitled to the rights of one.

The holder of a mortgage note secured with such a pact may proceed against the property and the mortgageor, without making party to his suit any third owner, either *via executiva* or *via ordinaria*, and just as if the property had not changed owners.

A third owner can set up no defenses which the morgageor could not.

The interpretation of laws are Vested Rights.

*Gibson, Hall & Montgomery* for the Insurance Company, on same side:

A mortgage with the pact *de non alienando* is not affected by the encumbrance or alienation of the property so mortgaged.

The owner of property acquired with such a mortgage resting on it can set up no defenses that the person who granted the mortgage could not, and he is not a third possessor, nor entitled to his rights.

Holders of notes secured by mortgage with the pact *de non alienando*, may disregard a third owner, and pursue the property and the person granting the mortgage, *via executiva* or *via ordinaria*.

*B. R. Forman* for John A. Morris, Defendant and Appellant:

First—Plaintiff (B) who alleges he is owner of only one-third of a property, has no legal interest to ask judicially a judgment decreeing that M has no title to the other two-thirds, and that they be given to C and D.  C. P., 15.

Second—An action of partition against C and D cannot be cumulated with a petitory action against M. Mayor vs. Armant, 14 A. 181; Theurer vs. Schmidt, 10 A. 293.

Third—A petitory action is not a summary case, and cannot be fixed and tried as such.

Fourth—Plaintiff, in petitory action, can only succeed on the strength of his own title and not by the weakness of that of his adversary. C. P. 44.

> DeArmas vs. New Orleans, 5 L. 183;
> Bailey vs. Percy, 44 L. 14;
> Landreaux vs. Foley, 13 An. 114;
> Hiestand vs. Forsyth, 12 An. 372;
> Carraby vs. LeBreton, 2 R. 242;
> Hart vs. Foley, 1 R. 380.

Plaintiff has proved no title to any property:

  (a) Because in the judicial record offered in evidence to prove title, there is no answer, citation, nor return of same;

    (b) Because a second *fi. fa.* could not legally issue while there was a first writ out partially executed and not returned.

    (c) No proces verbal nor deed of sale is in evidence.

    (d) A person in possession as owner, of a real property, cannot be legally divested by a sale under a writ against another person, without citation or notice to the former.

Fifth—There is no evidence in the record of any title whatever in either Marchand or the Factors' and Traders' Ins. Co., and plaintiff's claim should be rejected.

Sixth—If a material document offered in evidence is not in the record, the case should be remanded. Meyer vs. Dupree, 25 An. 216; Barrow vs. Landry, 12 An. 83; Lyons vs. Andrews, 5 An. 602; Agricultural Bank vs. Alexander, 1 An. 246; Evans vs. Murphy, 11 R. 477; Porter vs. Dugat. 9 M. 121.

---

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff brings this suit for the purpose of effecting a partition of three lots of ground and improvements, situated on Peters street, in this city, designated as lots Nos. 3, 4 and 6, and owned, as he alleges, in indivision and in equal shares, by himself, the Factors' and Traders' Insurance Company and Alfred Marchand.

He alleges that John A. Morris sets up title to lot No. 6 by virtue of an adjudication made to him by the sheriff, but averring the nullity of that sale, he prays that Morris be decreed to have no title to said lot.

For answer, the Insurance Company and Alfred Marchand recognized plaintiff's title in indivision with them, as alleged, and joined in the prayer for partition.

The judgment of the lower court recognized plaintiff, the Insurance Company and Alfred Marchand as the lawful, joint and undivided owners of the three lots of ground, and ordered a partition of the same, as prayed for, allotting them as follows:

Lot No. 3 to A. Marchand; Lot No. 4 to the Factors' and Traders' Insurance Company; Lot No. 6 to plaintiff, Neuville Bienvenu, and referred the parties to a notary public to complete the details of the partition.

The judgment also decreed the pretensions of ownership urged by John A. Morris as unfounded, null and void.

The Insurance Company and Alfred Marchand, being satisfied with that judgment, have not appealed, but John A. Morris, claiming to be the lawful owner of lot No. 6, has taken the present appeal.

The important facts of this very complicated case are as follows:

Up to April 26th, 1867, the three lots of ground herein sought to be partitioned were owned, in indivision and in equal shares, by Mrs. DeLassus, Miss Blanque and Louis Lalaurie.

At that date the three joint owners proceeded, by notarial act, to effect a partition among themselves of the three lots, which were allotted as follows:

Lot No. 3 to Mrs. DeLassus; Lot No. 4 to Miss Blanque; Lot No. 6 to Louis Lalaurie.

The act of partition contained a recital of the mortgages affecting the lots thus disposed of, in the name of each respective owner, who severally took the engagement to have the mortgages recorded against him cancelled within the shortest possible delay.

From this statement it appeared that the undivided share of Miss Blanque was affected with a mortgage of $4000, dating from the 5th of September, 1865; the share of Mrs. DeLassus, with a mortgage of $1000, dating from the 1st of December, 1863, and another mortgage for $4013, dating from the 18th of September, 1866, and that of Louis Lalaurie, with two mortgages in favor of plaintiff, Bienvenu, one for $1000, dating from March 10, 1866, and the other for $2000, dating from the 23d of June, 1866.

In 1875 the mortgage affecting Miss Blanque was foreclosed, under which the Factors' and Traders' Insurance Company became the owner of her share of the property in question.

On the 22d of June, 1871, Lalaurie, claiming to own the whole of lot 6, by effect of the act of partition of April, 1867, mortgaged it for $16,000, in foreclosure of which mortgage, in 1873, said lot No. 6 was adjudicated to John A. Morris.

In May, 1874, plaintiff, Bienvenu, obtained a judgment against Lalaurie for two thousand dollars, recognizing and enforcing his mortgage rights under the act of June 23, 1866, and, under a *fi. fa.* issued under his judgment, the share of Lalaurie, in lots 3, 4 and 6, was adjudicated to him in June, 1875.

In January, 1873, by private sale, Alfred Marchand purchased lot 3 from Mrs. DeLassus.

Thus stood the property when this partition suit was instituted.

In his answer, John A. Morris complains that this action is a peti-

tory action, and that plaintiff should be held to comply with the rules governing that action.

The answer to this position is that, having purchased property at a sheriff's sale, under a second mortgage, Morris himself, in vindicating his title in these proceedings, occupies the position of a plaintiff in a petitory action, who must succeed on the strength of his title, and not on the weakness of his adversary's.

He also complains that the Insurance Company and Alfred Marchand have shown no titles to their respective lots.

Their alleged co-owner, Bienvenu, who sues for a partition, is satisfied with their titles.

If Morris can claim any title at all in the premises, as resulting from the foreclosure of the Lalaurie mortgage of June, 1871, he must rest his claim on the legality and binding effect of the act of partition of April, 1867, and in that case he has no concern to investigate or ascertain the ownership of either lot 3 or lot 4.

If the partition of 1867 is null, then Lalaurie did not own lot No. 6, and his mortgage could, at most, affect but one-third of that lot, and, under that state of the case, Morris would have no more authority to look into the ownership of lots Nos. 3 and 4.

He finally urges the want of title of plaintiff himself, by reason of the nullity of his judgment against Lalaurie, and by further reason of his having proceeded to seize and sell property in the possession of Morris as owner, without process against him.

He urges as nullity of plaintiff's judgment that there was no answer, citation or return of service. While it is true that the record does not contain the citation or return in the suit, yet it does not appear that there was no citation or return; on the contrary, in ordering a default against Lalaurie, the judge says that the defendant had been duly cited, and in such a case the rule *omnia rite acta*, etc., must apply.

Appellant further urges that plaintiff has failed to produce the sheriff's deed to him. But the record shows that it was offered in evidence by plaintiff's counsel, and the absence of the document from the transcript, even after the writ of certiorari, cannot be attributed to him. We find in the record the sheriff's return on the writ of *fi. fa.*, showing his adjudication to plaintiff, and that is sufficient. 29 An. 270. In this connection we must dispose of appellant's prayer in his brief, asking us to remand the cause, for the reason that several important documents offered in evidence below are now missing. We have already shown that appellant could not be heard to contest the titles of either the Insurance Company or Alfred Marchand to lots 3 and 4; their titles are admitted by plaintiff in suing them for partition, and we can, therefore, treat them as owners without viewing their titles, which appear from the

record to have been exhibited in the lower court, and are now missing in this most extraordinarily mutilated record.

But as the transcript contains sufficient evidence to enable us to adjudicate upon the issues presented in the case, and to do justice between the parties, and the nature of the missing documents being such as to give no reasonable hope of recovering them, we fail to perceive the necessity or the wisdom of appellant's suggestion, and we must, therefore, deny his prayer to that effect. .

In answer to a writ of certiorari, calling for these very documents, the clerk answers that, after diligent search, he has been unable to find them; and we think that nothing could be gained by further delaying a decision of the cause. As we have stated above, if Morris has any rights to this property, he must derive them from the Lalaurie mortgage of June, 1871, which itself depends upon the effect to be given to the extrajudicial partition of 1867; and upon the rights which Lalaurie may have acquired under that partition to mortgage, dispose of, or otherwise alienate the whole of lot No. 6, of which he previously owned but one undivided third. A proper solution of this problem, upon which the judgment of the lower court is painfully silent, will at once dispel all the difficulties of the case.

Our jurisprudence is so well settled on the following points, that we shall deal with these propositions as axioms under our laws.

1st. The mortgageor can perform no act which impairs the obligation of his contract.

2d. That the holder of a mortgage cannot be affected by any subsequent alienation or transfer of the property mortgaged to secure his debt, and if his mortgage contains the pact *de non alienando*, he can enforce his mortgage against the mortgageor without reference to the vendee of the latter, who has acquired no greater rights than the mortgageor and cannot set up defenses which the latter could not. 2 N. S. 33; 4 An. 324; 13 An. 241; 27 An. 207; 32 An. 808, and numerous other authorities therein quoted.

3d. That an act of partition among co-owners of undivided property imports acts of alienation.

By reference to the extrajudicial partition which Miss Blanque, Mrs. DeLassus and Lalaurie attempted to operate in the act of April, 1867, it is shown that the undivided shares of all the owners were affected heavily with mortgages of anterior date.

In allotting to Mrs. DeLassus lot No. 3, it could not be transferred free of the mortgages affecting it in the name of Miss Blanque or of Lalaurie, the same holds of each other lot.

It follows, therefore, that the transfer of lot 6 to Lalaurie did not affect the rights of the creditors of Mrs. DeLassus and Miss Blanque.

For the same reason, no effect could follow the transfer of lot 4 to Miss Blanque, as to the creditors of Mrs. DeLassus and Lalaurie, and the same consequence attached to the transfer of lot No. 3 as to the creditors of Lalaurie and Miss Blanque.

It follows, therefore, that *quoad* these various mortgage creditors, any mortgage right granted by Lalaurie, in the act of June, 1871, was subordinate or second to the rights of said mortgage creditors on said lot, and, therefore, to all intents and purposes, in so far as it could affect these mortgage creditors, the extrajudicial partition was inoperative, and by the mortgage of Lalaurie of June, 1871, and under the sale and adjudication made thereunder, John A. Morris acquired no rights or title to lot No. 6, which could, in the least, affect or impair the mortgage rights acquired by the pre-existing creditors of all three of the joint and undivided owners.

Hence it follows that in 1875 the seizure of Miss Blanque's undivided share in the three lots by the Factors' and Traders' Insurance Company embraced one-third of lot 6, which passed under the sheriff's adjudication to the Insurance Company, thus destroying at the same time Morris' right of mortgage under the act of 1871, and his title under the adjudication of 1873 to that third of lot 6.

The same result followed as to lots 3 and 4 by the seizure of Bienvenu under his judgment recognizing his $2000 mortgage. No seizure was made of the rights of Mrs. DeLassus, but under these two seizures such rights of ownership of lot 3, as she had acquired under the extra-judicial partition, were destroyed, as being secondary to the mortgage rights of the creditors of Lalaurie and Miss Blanque. If the consideration for which she had transferred her interest or share in lot 4 to Miss Blanque, and in lot 6 to Lalaurie, thus failed, it follows that the transfer was annulled, and she was, by operation of law, restored to her original position as owner of one undivided third of lots 3, 4 and 6; and we hold that this was the interest which passed to Alfred Marchand by the act of January 28, 1873.

But appellant contends that Bienvenu having taken a judgment against Lalaurie, and having issued a *fi. fa.* under his judgment, could not, in law, proceed against appellant's property without process against him.

It is not disputed that by proceeding *via executiva* the holder of a mortgage containing the pact *de non alienando* can ignore any subsequent alienation of his mortgageor, and follow the property in any hands without notice to the subsequent vendee or possessor.

And it therefore appears that we are called upon to recognize a difference as to the mortgage rights of the plaintiff between the two modes of proceeding. But such a difference does not exist either in

logic, reason or law, and we cannot sanction the doctrine. The holder of a mortgage importing a confession of judgment is authorized by law to proceed by executory process against his debtor's property, and we cannot see how any of his mortgage rights can be restricted by a judgment of a competent court condemning his debtor personally to pay him the amount of the debt, and recognizing his mortgage rights. We understand, on the contrary, that by such a judgment the rights of the mortgagee are enlarged, instead of being curtailed or abridged.

Under his mortgage the creditor is confined in his seizure to the property mortgaged in his favor. But if his claim has ripened into a judgment, he can seize, besides the mortgaged property, if it be not sufficient to satisfy his demand, any other property belonging to his debtor.

We are at a loss, therefore, to perceive any strength in the position that a creditor, proceeding *via ordinaria*, is debarred from following the property of his mortgageor in the hands of any vendee, and without process against such vendee.

It follows, therefore, that the Bienvenu seizure and purchase had for effect to destroy the title of Morris to the third of lot No. 6, and that the property was owned, as alleged, in indivision and in equal shares, by plaintiff, Alfred Marchand, and the Factors' and Traders' Insurance Company, and that the judgment of the lower court is correct.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed at appellant's costs.

Justice Levy takes no part in this decision.

---

ON APPLICATION FOR REHEARING.

The opinion of the Court was delivered by

FENNER, J. After an attentive examination of the grounds assigned for a rehearing in this cause, we think no end of justice could be subserved by granting the same.

The only substantial controversy in the case is whether plaintiff or John A. Morris is the owner of the interest in this property which originally belonged to Louis Lalaurie.

If plaintiff owns the whole interest which belonged to Lalaurie, it is evident that Morris can own no interest, because he derives nothing except through Lalaurie.

The case was not affected by the conventional change in the particular property representing Lalaurie's interest, under the partition of 1867. That convention was conditioned upon his (Lalaurie's) and his co-contractor's removing the encumbrances with which their respective undivided interests were burdened.

The judicial enforcement of plaintiff's mortgage on Lalaurie's undivided interest in the whole property and the sale thereof, operated a breach of the condition, which *ipso facto* destroyed the partition of 1867, and left Lalaurie and his assignees, voluntary or forced, no interest whatever in the property.

As between the plaintiff and Morris the action is petitory in its ·character so far as concerns the one-third interest of lot No. 6 of which plaintiff claims the title against Morris in possession. To this extent plaintiff was necessarily bound to establish his title, and for the reasons stated in the original opinion, we think he has conclusively done so, and that the objections urged against the sufficiency of that proof are not sound. But as plaintiff in a partition suit he had the unquestioned right to summon all claiming to be holders of rights in indivision with him, and to have the Court determine their respective claims and titles, in order that he might have his partition contradictorily with the proper parties. This did not make the co-defendants of Morris plaintiffs in a petitory action against Morris. It simply required all parties to come forward and set up their respective titles.

The record clearly establishes that Morris has no title whatever.

The remaining undivided interests belong either to Mrs. DeLassus and Miss Blanque, or to their assignees.

The Insurance Company and Marchand claim to be such assignees—the plaintiff admits them to be—the Court, upon evidence which, though absent from this record, was before the judge, decides them to be. It is a question in which Morris has no interest. The important evidence missing from the transcript affects this question, and no other.

Morris is not entitled to have the cause remanded on that account, and could derive no benefit thereby.

Rehearing refused.